SCOTT FOSTER *v.* STATE OF MISSISSIPPI.

[45 South., 859.]

CRIMINAL LAW AND PROCEDURE. *Evidence. Declaration of co-defendant.*

On the separate trial of a defendant jointly indicted with two other persons for murder, the declaration of one of them not on trial, made after the homicide and out of the presence of the one on trial, that certain tracks, being followed by a searching party, were the tracks of the defendant on trial is inadmissible in evidence.

FROM the circuit court of Adams county.

HON. MOYSE H. WILKINSON, Judge.

Foster, appellant, was jointly indicted with two others for the murder of Luther Bell. A severance was had and appellant separately tried, convicted and sentenced to suffer death and appealed to the supreme court.

The decedent, Luther Bell, while traveling after dark along a private road, in a buggy with his wife and child, was shot from ambush and killed, the assassins escaping without being recognized. Early the next morning several persons found that the grass behind a clump of pine bushes, near the road where the homicide occurred, showed indications of having been trampled upon, and leading from the place were tracks of two persons, one of whom wore broad shoes, and the other pointed-toed shoes. These tracks were distinct and easily traced and led to a place where a mule had evidently been standing hitched to a tree. The broad shoe-prints could not be traced further, but tracks of the mule and those made by the pointed-toed

shoes were followed by the searchers a considerable distance beyond to the dwelling house of one Scott Wilkins, a negro, and thence to the home of appellant. There was evidence to show that the appellant wore sharp-toed shoes, and had them on when arrested two days after the homicide; that Henry Wilkins, another negro and an associate of Foster, wore shoes which would make broad tracks. The state relied largely on the testimony touching the tracks and the character of the shoes, although there was other incriminatory evidence of guilt. The state offered the testimony of several witnesses to the effect that while they were following the tracks made by the sharp-toed shoes, Scott Wilkins rode up and, without inquiry on their part, said to them, "that is son's track," referring to appellant whom he called son. The admission of this testimony was objected to by appellant, but the objection was overruled.

The opinion of the court contains a further statement of the facts.

*W. C. Martin,* for appellant.

It was error in the court below to admit in evidence, over appellant's objection, testimony as to the alleged statement of Scott Wilkins in regard to the tracks. The jury had heard the indictment, collocating the names of appellant and Scott Wilkins; and they knew, from the evidence, that the two were closely related by kinship and by association. It was apparent to the state that, with these facts known to the jury, any act or declaration on Scott Wilkins' part, in any way incriminatory of appellant, would operate most powerfully against the latter, and go very far towards a conviction. The alleged declaration of Scott Wilkins was made after the homicide. If the theory of the state, shown by the joint indictment of appellant and Scott Wilkins and another, that the three conspired to kill deceased was correct, certainly the conspiracy terminated with the homicide. The only possible ground upon which the declaration of Scott Wilkins could be admissible against appellant

was that the two were co-conspirators.   And, as the conspiracy, if one existed, must have terminated with the killing, the admission of the alleged statement by Wilkins, made the ensuing day, was clearly error.   8 Cyc., 679 ; *Brown* v. *State,* 30 Miss., 656 ; *Simmons* v. *State,* 61 Miss., 243 ; *Gillum* v. *State,* 62 Miss., 547.

In the case of *Browning* v. *State, supra,* the evidence tended to show assassination of deceased, and the guilt of the defendant was attempted to be proved solely by circumstances.   The trial judge permitted evidence to be introduced by the state as to the acts and declarations of one who was alleged to be a co-conspirator with the defendant, Browning; these acts and declarations being made *after* the death of the deceased.   The judgment of the trial court was reversed and the cause remanded for new trial for the error, among others, in admitting this testimony.

The alleged declaration by Scott Wilkins would of course be competent evidence against him, but the question here is whether it was competent against a third person, the appellant, who was not present when it was supposedly made.

It must be borne in mind that this alleged statement was not of a trivial nature ; it bore heavily upon the question before the jury.   But for its wrongful admission in evidence, who can say that the verdict of the jury might not have been in appellant's favor ?

*R. V. Fletcher,* attorney-general, for appellee.

Learned counsel for the appellant bases his hope of reversal upon the alleged errors of the trial court in admitting testimony before the jury as to a remark made by Scott Wilkins, and to certain acts on his part, in trying to influence the searchers to abandon their examination of the tracks.   There are only two items of evidence which were admitted over appellant's objection: Wilkins' alleged statement that the tracks were appellant's, and the efforts made by Wilkins to throw the searchers

off of the trail. Proof of the suspicious conduct of Wilkins was admissible as tending to establish a conspiracy, which cannot usually be shown by direct evidence. The connection of any person with the unlawful enterprise may be shown by circumstances.

But if mistaken and this proof does not show a conspiracy, then appellant was not wrongfully affected by the admission of the same. For if the theory of conspiracy is not thereby strengthened, then the evidence, even if deemed irrelevant, would be harmless in so far as appellant is concerned. The admission might harm Wilkins as showing his guilt independently of any connection which appellant might have with the crime, but would not militate against the latter. Hence, the admission of such evidence is not ground for reversal.

"Acts of the parties, although after the consummation of the crime, done for the purpose of escaping detection, are admissible." 3 Encyc. Ev., 432.

WHITFIELD, C. J., delivered the opinion of the court.

The statement by Scott Wilkins on the day after the killing to those following a certain track that the track was "son's track"—that is, Scott Foster's track—ought not to have been admitted in evidence. It must have been admitted on the idea that it tended in some way to show a conspiracy between Scott Wilkins and Scott Foster. What was said in *Browning's case,* 30 Miss., 656, is peculiarly applicable here. The court said: "The offense charged, if committed at all, was unseen by all save the parties engaged in its perpetration. The whole transaction was shrouded in secrecy. The very fact of the homicide, as well as the question who were the perpetrators of the deed, depended entirely upon indirect or circumstantial evidence. The charge, as laid in the indictment, presupposes the co-operation of at least two persons in the commission of the offense. It may hence well be conceded that peculiar and urgent circumstances existed in the cause, which authorized the application

of the exception to the rule above stated, if any combination of circumstances could authorize a departure from the prescribed mode. But it should ever be borne in mind that no man can be asserted to be legally guilty of an offense unless his guilt shall have been established according to the forms and principles of law; and that in no case should a disregard of either the law itself or its established forms be tolerated, from any considerations of difficulty in the conviction of offenders, or from the supposed manifest guilt of the accused." This was said with reference to evidence like that now being discussed, to wit, acts and declarations of an alleged conspirator after the consummation of the conspiracy. The damaging character of this testimony is perfectly manifest. The searchers for the guilty parties were at the time following a track which they supposed to be the track of Scott Foster, which track they did follow for a distance of some three miles, but with a break at one place in the road of at least half a mile. Whilst they were so engaged pursuing this track, Scott Wilkins rides up to them and states that the track was "son's track"—that is, Scott Foster's track. He also, according to the testimony, manifested a good deal of uneasiness at the pursuit of this track; the state's theory being that he wished to divert the parties from any further following the track. This track was then approaching Scott Wilkins' house when he made this remark.

It must be remembered that there had been a severance, and Scott Foster alone was on trial. Evidently Scott Wilkins was trying to divert suspicion from himself. He did not desire the track should be followed because it went to his house. It would be perfectly competent evidence against Scott Wilkins himself; but the question here is whether this testimony should be admitted when Scott Foster was on trial. It is true that the testimony of the woman Cassie Pride and of Laura Kelly and Sidney Fowler, very strongly and heavily weighs against the defendant; but that does not relieve us from the necessity of meeting this clearly incompetent testimony and of saying

whether without it there might not have been a different result. If this testimony were of light value, were inconsequential in its nature, we would not hesitate; but it is of the most fatal and damaging character possible to be imagined. The learned attorney-general does all that it is possible to do to save the case. He insists that the testimony tends to prove the conspiracy between Scott Foster and Scott Wilkins, and, if in that he be mistaken, then he insists that the testimony would be harmless, if no conspiracy was shown, so far as Scott Foster was concerned. It might, he says, harm Scott Wilkins, as showing his connection, independently of any connection which Scott Foster might have with the crime, but would not militate against Foster. We hardly think this is tenable. It is doubtless true that acts of the parties, although after the consummation of the crime, done for the purpose of escaping detection, are admissible; but that would apply to Scott Wilkins alone, not to Scott Foster, in this case, unless the conspiracy had been shown. But all these observations apply alone to that part of the testimony showing that Scott Wilkins was endeavoring in an agitated manner to divert the pursuers from longer following the track. It still leaves the most damaging and fatal part of the testimony, that of "son's track," to be disposed of. This certainly was error, and it is impossible for us to say that without this testimony there might not have been a different result.

*Reversed and remanded.*